UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
                           :

LINDA J.  GEIGER,                :
                           :

            Plaintiff,     :     Case No.  05 CV 6982
                           :

            v.               :
                           :     **COMPLAINT**

HOME DEPOT U.S.A., INC.,    :
                           :     (Demand for Trial by Jury)

           Defendant.    :
                           :
-------------------------------------------------X

        Plaintiff Linda J. Geiger, by her attorney, alleges as follows for her Complaint against Defendant:

**NATURE OF ACTION**

        1.     This action is brought to remedy claims of a hostile work environment, racial and gender discrimination, sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) et.  seq.  as amended ("Title VII"), the New York State Human Rights Law, Executive Law Secs. 290 et seq. (the "Human Rights Law"); and the Administrative Code of the City of New York Secs. 8-101 et seq. (the "Administrative Code").

        2.     Plaintiff seeks injunctive and declaratory relief, compensatory damages, punitive damages, liquidated damages, back pay, benefits, attorney fees and other appropriate relief pursuant to federal law.

**JURISDICTION AND VENUE**

        3.     Plaintiff filed a timely charge of discrimination against the Defendant with the Equal Employment Opportunity Commission ("EEOC") on or about September 22, 2004, complaining of a hostile work environment, racial and gender discrimination, sexual harassment and retaliation, as alleged herein.

        4.     By notice dated May 17, 2005, the EEOC advised Plaintiff of her right to sue

Defendant in federal court.  This action has been commenced within 90 days of Plaintiff's receipt of the said notice.  Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under applicable law.

5.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. §§1331 and 1337 and 42 U.S.C.A. §2000e-5(f).

6.      This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C.A. §1367(a).

7.      The Defendant regularly does business within the Southern District of New York.  Venue is proper in this District pursuant to 28 U.S.C.A. §1391(b).

## PARTIES

8.      Linda J. Geiger ("Plaintiff") is a Caucasian naturally blonde female and at all times material hereto was an Assistant Store Manager at Respondent Home Depot Corporation, store number 1255 in Queens, New York. Plaintiff is over 18 years of age and a resident of New Jersey.

9.      On information and belief, Defendant Home Depot U.S.A., Inc. ("Defendant") is a Delaware Corporation maintaining its principal place of business in Atlanta, Georgia and doing business throughout the country, including in Queens and Manhattan, New York.  On information and belief Defendant is, and all times material times hereto was, authorized to do business in the State of New York.

## FACTUAL ALLEGATIONS

10.      In May of 1996 Plaintiff commenced work with the Defendant as a Sales Associate in the paint department.  In the subsequent years, Plaintiff's responsibilities increased and she worked in the following positions of increased responsibility: Head Cashier, Front End Supervisor, Special Order Manager and Merchant Assistant.  In 2000, Plaintiff was promoted to the position of Assistant Store Manager and in June 2004 she

was promoted to be a Division Sales Merchant.

11.     Plaintiff's high caliber of work was frequently recognized by Defendant in various ways. Plaintiff was chosen by Defendant to meet prominent people in connection with store tours (e.g., the former head of the New York Stock Exchange) and to appear on television news features that were shot on location at local stores.

12.     Plaintiff was featured in Forbes magazine for causing Jacuzzi sales at Defendant to increase by $22.5 million in one year (1998) and Plaintiff successfully completed the first project X in Brooklyn in 2002 - full kitchen remodel, new kitchen showroom concept.  Plaintiff was also fully bonused in the Flushing store in 2001 for exceeding the sales budget by $400,000 for departments 26 & 29 combined.

13.     Though demonstrably highly qualified, Plaintiff was improperly barred by Defendant from further promotion and advancement and she was discriminated against.

14.     In October 2002, after a short period when Plaintiff left her employment with Defendant due to a personal matter, Plaintiff was assigned to be Assistant Store Manager under Bernard Mayer ("Mayer") at the Hamilton Brooklyn Store #1225.

15.     From the start of her employment at the Defendant's Brooklyn location, Plaintiff was treated differently than the other ethnic employees she worked with and she was discriminated against.

16.     A major issue confronting Plaintiff in her new position was the need to increase her sales staff in order to repair the 50% deficit in sales that occurred during the previous year, prior to her arrival.  On numerous occasions, Plaintiff attempted to speak to Mayer about her staffing needs but was rebuffed.  He screamed at her, yelled, and treated Plaintiff horribly, in private as well as when others were around to hear.

17.     Plaintiff then approached her District Manager, Ken Williams ("Williams"), with the hope of having her staffing needs filled. Williams asked Plaintiff to prepare a

graph that would demonstrate the past decline in sales and said that he would present her research at a specialty meeting.  Plaintiff did what she was told to do by Williams.

18.     At the specialty meeting that took place in early March 2003, it became apparent that many other stores had the same issues as were articulated by Plaintiff in her graph and a discussion followed.  Mayer learned what was said at the problem solving forum/discussion and thereafter labeled Plaintiff a "troublemaker" and "insubordinate".

19.     Mayer contacted Cheryl Grant ("Grant"), the District Human Resources Manager, and informed her, inter alia, that Plaintiff had been insubordinate.  Shortly thereafter, at a March 2003 meeting attended by Plaintiff, Mayer, Williams, Allen Schwartz, and Grant, Grant suggested to Plaintiff that she quit.

20.     Among other things, Grant falsely stated that nobody liked Plaintiff and that nobody would want her in any other store.  Grant stated that as long as she was the District Human Resources Manager, she would see to it that Plaintiff was never promoted. She said that she wanted to fire Plaintiff but was prevented from doing so. Grant then threatened Plaintiff with a write up.  Grant humiliated and degraded Plaintiff.

21.     Williams recognized that Plaintiff was being unfairly treated and at the end of March, 2003, arranged for her to transfer to the Long Island City Store, 1255, where she worked until promoted into the Expo Division of Home Depot.

22.     Plaintiff's promotion into the Expo Division of Home Depot was the result of her contacts with, and application to, persons in the Expo Division.  Upon information and belief, Plaintiff would not have received the promotion into that division if Grant had been involved in the process as a decision maker.

23.     Upon Plaintiff's transfer to Store 1255, two Assistant Store Managers made life difficult for Plaintiff from the onset. On more than one occasion Mike Matthews ("Matthews") made unwelcome comments to Plaintiff.  On other occasions, Matthews

stated that Plaintiff needed "a Black man in her life," "Black men have large………", and that she should "get Edison [an Assistant Manager at the store who was from Trinidad] in her life".  Over Plaintiff's objections, similar racist and sexist  comments continued.

24.     Over the next few months, untrue rumors were spread about Plaintiff with the intent, and partial effect, that her reputation at the store would be ruined.  On information and belief, false incident statements were willfully and maliciously written about Plaintiff.  One such incident report stated that Plaintiff had access to and improperly used, confidential information about other employees.

25.     An investigation of the false incident reports subsequently revealed that the allegations against Plaintiff were not true.  Matthews and Anthony Orocho ("Orocho") (both of whom are of color) were assigned to be transferred from Store 1255 to another store, effective February 23, 2004, as a result of the investigation.

26.     On the afternoon of February 20th, 2004, three days prior to Matthew's and Orocho's scheduled transfer, Plaintiff saw Matthews and Orocho in the computer room. She went inside and wished them luck in their new store.

27.     Orocho gave Plaintiff a hug.  As she turned to leave, Matthews grabbed Plaintiff and put his hand on her backside and pushed it between her legs.  When Plaintiff objected and demanded that he leave her alone, Matthews grabbed her more forcefully and told her to shut up because she "loved" what he was doing.  Matthews proceeded to slide his hand up the inside of the back of her shirt and then down into her pants and pressed himself into her.  His erection could be felt through his pants against Plaintiff's pelvic bone.

28.     After a few moments, Plaintiff broke away and ran out of the room. She was completely humiliated and emotionally distraught. Plaintiff started crying and when her Manager asked her what was wrong she was so upset that she could not speak.

Plaintiff left the store and told her manager what had happened a few days later.

29.     The hostile touching in the computer room was digitally recorded by Defendant.  Plaintiff wrote an incident report and gave it to her store Co-Manager, Shivani Dwarka.  In Plaintiff's presence, the District Manager, Bobby Alli, viewed the digital recording frame by frame and was clearly upset.  At least twice, he pointed at the video screen and shouted "that's wrong".

30.     Despite Defendant's claim to have a "no tolerance" sexual harassment policy, Matthews and Orocho were transferred to their new store as previously arranged. On information and belief, no disciplinary action was ever taken against either of them and no investigation of Matthews and/or Orocho was done.  No results of any investigation of Matthews or Orocho were ever reported to Plaintiff.

31.     On information and belief Caucasian employees were terminated by Defendant for allegedly violating the aforementioned "no tolerance" policy.  The failure to discipline and/or terminate Matthews and Orocho is demonstrative of Defendant's tolerance for the sexual harassment of its Caucasian female employees and/or of Defendant's enforcement of one policy for Caucasians and of a different policy for people of color.

32.     When Plaintiff was first given a performance evaluation in August 2003 during a "round table" with all store managers and the District Manager present, Plaintiff's store manager spoke favorably of Plaintiff but Grant spoke negatively of her. Grants comments impacted adversely on Plaintiff's performance evaluation.

33.     Another performance evaluation of Plaintiff was issued in March 2004.  It was also lower than what Plaintiff deserved and her store manager was very upset about that.  He told Plaintiff that there was nothing he could do about the evaluation and that he had fought for Plaintiff with respect to it but that Grant and Bobby Alli forced the rating

to be lowered to "performer", "acceptable" and "grow in position".  That review was in furtherance of Grant's earlier statement to the effect that Plaintiff would never be promoted as long as Grant was in a position of power.

34.    The 2004 review had a severe economic impact on Plaintiff in that she received a raise of only $1,200 and a mere 425 stock options.  If she had been given a better review, as she deserved, Plaintiff would have received a higher raise and more stock options.

35.    In January of 2004, Plaintiff attended a meeting of store managers and assistant store managers. At the meeting, someone from corporate headquarters in Atlanta announced with pride the fact that store managers were being selected with a view toward matching the demographics of the areas in which the stores were located. As a blond Caucasian woman it became apparent to Plaintiff that the deflation of her evaluations and her not being offered store manager positions was related to racial considerations.

36.    In early May 2004, Plaintiff sustained a severe chest contusion with injury to the chest wall and cardiac area, while at work.  Upon Plaintiff's submission of a doctor's note requesting that she not work more than eight hours a day, and not be required to perform strenuous physical tasks for the next two months, she was told by Grant that Defendant could not accommodate her and that she would have to take a leave of absence.

37.    Plaintiff was paid during her leave but she would have preferred to work because staying home was viewed in a negative light by Defendant.

38.    Shortly thereafter, another assistant store manager, sustained an injury and requested the same accommodation of not having to perform strenuous work for a while. That employee was immediately granted an accommodation by Grant and was not required to take a leave of absence.

39.     During the term of Plaintiff's employment, she was consistently paid less than her male counterparts as she had not been promoted despite her having had equal and/or better qualifications than they had.

40.     The injuries to Plaintiff have been continuous and oppressive, have extended over a long period of time and have been severely injurious to her. She has been embarrassed, humiliated, personally violated, suffered feelings of diminished self esteem, had her career path interrupted and has been hurt emotionally and economically.

41.     Plaintiff has been unlawfully discriminated and retaliated against because of her race, gender and disability.

42.     By virtue of the actions of Defendant, Plaintiff has sustained, and is sustaining damages.  Defendant should be enjoined from further discriminatory actions and should be directed to make Plaintiff whole.  She should be made whole financially for all of her losses and should be awarded compensatory and punitive damages.

## AS A FIRST CAUSE OF ACTION - ARTICLE VII CLAIM

43.     Plaintiff re-alleges paragraph 1 through 42, inclusive, of this Complaint.

44.     The Defendant discriminated against Plaintiff in the terms and conditions of her employment on the basis of her race and/or gender, and allowed her to be sexually harassed and to be subjected to a racially and sexually hostile environment, and retaliated against her, in violation of Title VII.

45.     In taking the above-described discriminatory actions, the Defendant acted with malice and reckless indifference to Plaintiff's rights under the Title VII.

46.     As a result of the Defendant's discriminatory acts, Plaintiff has suffered and continues to suffer economic loss, mental anguish, emotional distress and other compensable injuries and seeks Seven Hundred Thousand Dollars as compensatory damages and a like amount as punitive damages.

## SECOND CAUSE OF ACTION - NEW YORK'S HUMAN RIGHTS LAW

47.     Plaintiff repeats paragraphs 1 through 42, inclusive, of this Complaint.

48.     The Defendant discriminated against Plaintiff in the terms and conditions of her employment on the basis of her gender and/or race, allowed her to be sexually harassed and to be subjected to a sexually hostile environment, denied her promotions, and retaliated against her, in violation of  New York's Human Rights Law, Executive Law Article 15, §296.

49.     In taking the above-described discriminatory actions, the Defendant acted with malice and reckless indifference to Plaintiff's rights under New York's Human Rights Law.

50.     As a result of the Defendant's discriminatory acts, Plaintiff has suffered and continues to suffer economic loss, mental anguish, emotional distress and other compensable injuries and seeks Seven Hundred Thousand Dollars as compensatory damages.

## THIRD CAUSE OF ACTION - NEW YORK CITY'S ADMINISTRATIVE CODE

51.     Plaintiff repeats paragraphs 1 through 42, inclusive, of this Complaint.

52.     The Defendant discriminated against Plaintiff in the terms and conditions of her employment on the basis of her gender and/or race, and allowed her to be sexually harassed and to be subjected to a sexually hostile environment, denied promotions, and retaliated against her, in violation of New York City's Administrative Code.

53.     In taking the above-described discriminatory actions, the Defendant acted with malice and reckless indifference to Plaintiff's rights under New York City's Administrative Code.

54.     As a result of the Plaintiff's discriminatory acts, Plaintiff has suffered and continues to suffer economic loss, mental anguish, emotional distress and other

compensable damages and seeks Seven Hundred Thousand Dollars as compensatory damages and a like amount as punitive damages.

      **WHEREFORE**,  Plaintiff respectfully requests that this Court enter a Judgment in her favor and against Defendant:

      a)    declaring the acts and practices by Defendant complained of herein to be violations of Title VII, the New York's Human Rights Law and New York City's Administrative Code;

      b)    enjoining and permanently restraining these violations of the acts and practices by Defendant complained of herein to be violations of Title VII, New York's Human Rights Law and New York City's Administrative Code;

      c)    directing Defendant to take such affirmative steps as are necessary to ensure that these unlawful practices are discontinued and eliminated, and do not continue to affect Plaintiff's employment opportunities;

      d)    directing Defendant to develop and implement, under the supervision of this Court, an effective policy to prevent racial and sexual discrimination, sexual harassment and unlawful retaliation;

      e)    directing Defendant to pay Plaintiff compensatory and punitive damages;

      f)    directing Defendant to pay Plaintiff an amount equal to her lost wages and benefits retroactive to the date of discrimination and/or retaliation, with interest thereon, together with an equal amount as liquidated damages by virtue of its wilful and malicious actions;

      h)    awarding Plaintiff the costs of this action, interest, and attorney's fees; and

      i)    granting Plaintiff such other and further relief as this Court deems

necessary and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable in this action.

Dated:     New York, New York
           August 4, 2005

                              /s/ Arnold Pedowitz
                              ARNOLD H. PEDOWITZ (AP-1382)
                              Attorney for Plaintiff
                              1501 Broadway, Suite 800
                              New York, NY 10036
                              (212) 403-7321